Lloyd DAY, Appellant,

v.

FAIRBANKS COAL COMPANY; Hon. Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees,

and

FAIRBANKS COAL COMPANY, Cross–Appellant,

Lloyd Day, Jr.; Hon. Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Cross–Appellees.

No. 2004–SC–0262–WC, 2004–SC–0289–WC.

Supreme Court of Kentucky.

April 21, 2005.

---

**17.** *C.f., Commonwealth v. Barroso,* 122 S.W.3d 554, 558 (2003).

Mark L. Ford, Harlan, Counsel for Lloyd Day, Jr.

Paul E. Jones, Jones, Walters, Turner & Shelton, PLLC, Pikeville, Counsel for Fairbanks Coal Company.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) rejected the claimant's challenge to the consensus reached by three B-readers as well as his argument that the underlying reports were inadmissible under KRS 342.316(3)(b)1. because they identified the x-ray that was interpreted by a letter of the alphabet rather than the date on which it was taken. Relying on the consensus classification, the ALJ dismissed the application for pneumoconiosis benefits. Although the Workers' Compensation Board (Board) affirmed, the Court of Appeals reversed and remanded the claim. Its rationale was that the B-readers' reports were based on undated x-rays and that KRS 342.316(3)(b)1. unambiguously required an x-ray to contain the date on which it was taken in order to be admissible as evidence.

It is undisputed that the claimant was exposed to coal dust while working for the defendant-employer and that he quit working on July 11, 1997, due to a back injury. On November 15, 2002, he filed an application for benefits under the July 15, 2002, version of KRS 342.732, alleging that he suffered from coal workers' pneumoconiosis.[1] Accompanying the application was a

---

1. The employer conceded that because the claimant's last exposure occurred between December 12, 1996, and July 15, 2002, KRS 342.792 applied. As enacted effective July 15, 2002, KRS 342.792(3) permitted claims in which the last exposure occurred within the requisite period to be filed before December 12, 2003, or the period set forth in KRS 342.316(4)(a), whichever was longer. KRS 342.792(1) provided that such claims were to be decided as though the July 15, 2002, version of KRS 342.732 were in effect on the date of last exposure.

report by Dr. Alexander. The report indicated that Dr. Alexander evaluated a September 12, 2002, x-ray and found abnormalities that were consistent with category 1/1 pneumoconiosis.

On February 6, 2003, the employer submitted a report by Dr. Dahhan, which indicated that he examined the claimant on January 27, 2003. The report also indicated that Dr. Dahhan evaluated a January 27, 2003, x-ray and found no abnormalities that were consistent with pneumoconiosis.

As provided in KRS 342.316(3)(b)4.e., on February 24, 2003, the Commissioner of the Department of Workers' Claims notified the parties that the reports were not in consensus. The letter stated that the x-rays the parties had filed would be forwarded to three B-readers for interpretation and that the parties would be notified at the conclusion of the process. The x-rays the parties submitted were then forwarded to Drs. Rosenberg, DePonte, and Lockey to select and interpret the highest quality film.

Dr. Rosenberg's March 5, 2003, report and accompanying letter indicated that he interpreted x-ray "G," which he graded as quality 2 because it was light. He found no abnormalities that were consistent with pneumoconiosis but did find evidence of old granulomatous disease that was consistent with a past infection such as tuberculosis.

Dr. DePonte's March 19, 2003, report indicated that she interpreted x-ray "G," which she graded as quality 1. She found abnormalities that were consistent with category 0/1 pneumoconiosis.

Dr. Lockey's March 21, 2003, report indicated that he interpreted x-ray "G," which he graded as quality 1. He found no abnormalities that were consistent with pneumoconiosis and classified the profusion as category 0/0. He stated that the abnormalities he found were consistent with old TB or histoplasmosis.

Among other things, KRS 342.316(3)(b)1. requires that x-rays be indelibly labeled with the date on which they were taken and that reports of x-ray interpretations contain the date of the x-ray in order to be admissible as evidence. The x-rays the parties submitted are not part of the record on appeal, but there is no assertion that they failed to comply with the statute when the parties submitted them. Nonetheless, all of the B-readers' reports identified the x-ray that was chosen for interpretation with the letter "G," and none contained the date of the x-ray that was interpreted. An internal form that was used by the Department to record party and panel x-ray readings indicates, however, that the x-ray Drs. Rosenberg, DePonte, and Lockey chose to interpret was the one submitted by the claimant. It also notes the category that each physician reported as well as the existence of a consensus. In a letter dated April 3, 2003, the Commissioner notified the parties that the B-reader reports had been reviewed, that there was a consensus reading, and that the claim would be assigned to an ALJ.

The claimant challenged the consensus reading. Among other things, he asserted that it was based on reports that failed to list the date of the x-ray that was interpreted or to indicate that the reader found it to be the highest quality film. The employer proceeded to depose Drs. Dahhan and Lockey. It also filed into evidence the reports from Drs. Rosenberg, Lockey, and DePonte. Objecting, the claimant asserted that the reports were inadmissible because they did not comply with KRS 342.316(3)(b)1. He also maintained that the regulations permitted the parties to file only one medical report, and the employer had already filed a report from Dr. Dahhan.

When the claim came before the ALJ, the contested issues included, among other things, the claimant's challenge to the consensus reading and his challenge to the admissibility of the panel members' reports. The ALJ noted that the Commissioner had certified a consensus of category 0/0 to 0/1 and that the certification was consistent with the criteria set forth in KRS 342.316(3)(b)4.f. Although acknowledging that the three reports did not list the date of the x-ray that was interpreted, the ALJ noted that they all identified the x-ray with the letter "G." Convinced that the letter was equivalent to a date under the circumstances, because it clearly designated which x-ray the B-reader interpreted, the ALJ rejected the argument that the reports were inadmissible as evidence. After determining that there was no clear and convincing evidence the consensus reading was erroneous, the ALJ concluded that a decision must be based on the reading and dismissed the claim. KRS 342.316(13); KRS 342.794(2). Finally, the ALJ stated that Dr. Dahhan would have been found to be the most credible of the physicians had there been no consensus and that the claim would have been dismissed based on his reading of category 0/0.

KRS 342.316 provides, in pertinent part, as follows:

(3) The procedure for filing occupational disease claims shall be as follows:

(a) The application for resolution of claim shall set forth the complete work history of the employee with a concise description of injurious exposure to a specific occupational disease, together with the name and addresses of the employer or employers with the approximate dates of employment. The application shall also include at least one (1) written medical report supporting his claim. This medical report shall be made on the basis of clinical or X-ray examination performed in accordance with accepted medical standards and shall contain full and complete statements of all examinations performed and the results thereof. The report shall be made by a duly-licensed physician. The commissioner shall promulgate administrative regulations which prescribe the format of the medical report required by this section and the manner in which the report shall be completed.

1. For coal-related occupational pneumoconiosis claims, each clinical examination shall include a chest X-ray interpretation by a National Institute of Occupational Safety and Health (NIOSH) certified "B" reader. The chest X-ray upon which the report is made shall be filed with the application as well as spirometric tests when pulmonary dysfunction is alleged.

. . . .

(b) *To be admissible,* medical evidence offered in any proceeding under this chapter for determining a claim for occupational pneumoconiosis resulting from exposure to coal dust shall comply with accepted medical standards as follows:

1. *Chest X-rays* shall be of acceptable quality with respect to exposure and development and *shall be indelibly labeled with the date of the X-ray and the name and Social Security number of the claimant. Physicians' reports of X-ray interpretations shall: identify the claimant by name and Social Security number; include the date of the X-ray* and the date of the report; classify the X-ray interpretation using the latest ILO Classification and be accompanied by a completed copy of the latest ILO Classification report. Only interpretations by National Institute of Occupational Safety and Health (NIOSH) certified "B" readers shall be admissible. (emphasis added).

. . . .

3. The commissioner shall promulgate administrative regulations pursuant to KRS Chapter 13A as necessary to effectuate the purposes of this section. . . .

4. The procedure for determination of occupational disease claims shall be as follows:

a. Immediately upon receipt of an application for resolution of claim, the commissioner shall notify the responsible employer and all other interested parties and shall furnish them with a full and complete copy of the application.

b. The commissioner shall assign the claim to an administrative law judge . . . .

. . . .

d. Within forty-five (45) days of assignment of a coal workers' pneumoconiosis claim to an administrative law judge, the employer shall cause the employee to be examined by a physician of the employer's choice and shall provide to all other parties and file with the commissioner the X-ray interpretation by a "B" reader. . . . The commissioner shall determine whether the X-ray interpretations filed by the parties are in consensus.

e. If the readings are not in consensus, the commissioner shall forward both films, *masking information identifying the facility where the X-ray was obtained and the referring physician,* consecutively to three (3) "B" readers selected randomly from a list maintained by the commissioner for interpretation. Each "B" reader shall select the highest quality film and report only the interpretation of that film. The commissioner shall determine if two (2) of the X-ray interpretations filed by the three (3) "B" readers selected randomly are in consensus. If consensus is reached, the commissioner shall forward copies of the report to all parties as well as notice of the consensus reading which shall be considered as evidence. If consensus is not reached, the administrative law judge shall decide the claim on the evidence submitted. (emphasis added).

f. "Consensus" is reached between two (2) chest X-ray interpreters when their classifications meet one (1) of the following criteria: each finds either category A, B, or C progressive massive fibrosis; or findings with regard to simple pneumoconiosis are both in the same major category and within one (1) minor category (ILO category twelve (12) point scale) of each other.

g. The administrative law judge shall conduct such proceedings as are necessary to resolve the claim and shall have authority to grant or deny any relief, including interlocutory relief, to order additional proof, to conduct a benefit review conference, or to take such other action as may be appropriate to resolve the claim.

. . . .

(13) . . . . The consensus classification shall be presumed to be the correct classification of the employee's condition unless overcome by clear and convincing evidence. If an administrative law judge finds that the presumption of correctness of the consensus reading has been overcome, the reasons shall be specially stated in the administrative law judge's order.

KRS 342.794(1) directs the Commissioner to maintain a list of qualified B-readers

who are hired by the Department to interpret chest x-rays when the readings submitted by the parties are not in consensus. Parties commonly refer to the three randomly-selected B-readers who consider the x-rays in a given claim as a consensus panel. KRS 342.316(3)(b)4.f. defines a consensus, and KRS 342.316(3)(b)4.e. provides that "the consensus reading shall be considered as evidence." Consistent with the Department's authority to regulate the practices and procedures for processing claims, the Commissioner also promulgated 803 KAR 25:009, § 3(3), which provides that the three B-readers' reports "shall be admitted into evidence without the necessity of a notice of filing by any party."

■ The adverb "indelibly" means "irremovably," "inerasably," or "inexpungibly." *See Webster's New International Dictionary* 1262 (2nd ed.1956). The verb "mask" means to "cover" or "conceal." *See Webster's New International Dictionary* 1509 (2nd ed.1956). There is no dispute that when submitted to the Department the parties' x-rays of the claimant's chest complied with KRS 342.316(3)(b)1. and were indelibly labeled with his name, his social security number, and the date on which they were taken. It appears from the record that before the Department forwarded the x-rays to the consensus panel, it masked not only the names of the facility where they were taken and the referring physician but also masked the date, substituting a letter of the alphabet and recording the letter assigned to each x-ray. We say this because all of the panel members identified the x-ray they chose to interpret with the claimant's name and social security number but with the letter "G" rather than a date, and the Department's internal form indicated that each had interpreted the x-ray the claimant submitted. At issue is whether the ALJ erred by failing to determine that Department's action had the effect of rendering the panel members' reports and/or their consensus inadmissible as evidence.

■ KRS 342.316(3)(b)1. is clear and unambiguous regarding the information that must be provided in order for x-rays and x-ray reports to be admissible as evidence. Nonetheless, although this Court has a duty to accord the words of a statute their literal meaning, it is not required to do so if the result would be absurd or wholly unreasonable. *See Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky.1984); *Overnite Transportation Co. v. Gaddis,* 793 S.W.2d 129 (Ky.App.1990). Furthermore, KRS 446.080(1) provides:

> All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature, and the rule that statutes in derogation of the common law are to be strictly construed shall not apply to the statutes of this state.

It is undisputed that KRS 342.316(3)(b)1. requires the x-ray reports the parties submit as evidence to be prepared by B-readers. It also requires x-rays and x-ray reports to be identified with the name and social security number of the claimant as well as the date of the x-ray in order to be admissible as evidence. With respect to the x-rays and reports that the parties submit, the apparent purpose of requiring those particular items of identification is to assure not only that the x-ray pertains to the correct individual but also that the x-ray report relates to both the same individual and the same x-ray. The date serves the additional purposes of distinguishing multiple x-rays of the same individual and assuring that the x-ray and report that the employer submits are produced within the period set forth in KRS 342.316(3)(b)4.d.

Additional considerations are present at the second level of the consensus process. As is apparent from KRS 342.794(1) and

KRS 342.316(3)(b)4.e., the purpose of the second level is to provide evidence from additional B-readers who are hired by the Department and, therefore, are neutral. The masking requirement furthers the purpose of KRS 342.794(1) and KRS 342.316(3)(b)4.e. by preventing bias against certain physicians and medical facilities from being a factor in consensus panel interpretations. We note, however, that nothing in Chapter 342 or the regulations prohibits B-readers who interpret x-rays for the Department in a given claim from also interpreting x-rays for plaintiffs or defendants. It is for that reason that 803 KAR 25:009, § 4(3)(b) requires the Department to be certain that no member of a consensus panel provided the initial reading for the plaintiff or defendant.

Neither KRS 342.316(3)(b)1. nor a regulation provides for the date of an x-ray to be masked. Nonetheless, it would be obvious to members of a consensus panel that the x-ray bearing the earlier date was submitted by the plaintiff and the other by the defendant, giving rise to the potential for bias. Hence, to apply KRS 342.316(3)(b)1. literally and require consensus panel reports to identify the x-ray being interpreted by its date (rather than by a letter of the alphabet that represents the date) would undermine the very purpose of obtaining the reports.

 A consensus panel's charge under KRS 342.316(3)(b)4.e. is to review the x-rays the parties have submitted and to interpret the highest quality x-ray, a task for which the date of an x-ray or the identity of the party that submitted it is immaterial. The sole function of the date at that stage of the process is to distinguish one x-ray of the worker from another for the purpose of stating which was interpreted. Masking the date of each x-ray and substituting a letter of the alphabet as the Department has done not only preserves the anonymity of the party that submitted it but enables the x-rays being reviewed to be distinguished. Hence, it furthers the purposes of KRS 342.316(3)(b)4.e. and KRS 342.794(1) as well as the purposes of KRS 342.316(3)(b)1. We conclude, therefore, that reports by the three B-readers hired by the Department may identify the x-ray being interpreted with a letter of the alphabet assigned by the Department rather than the date on which it was taken.

The decision of the Court of Appeals is reversed, and the decision of the ALJ is reinstated.

All concur.